UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:16cr189 (MPS) |
| | : | |
| v. | : | |
| | : | |
| JASON PRAWL | : | August 8, 2017 |

**<u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>**

Defendant Jason Prawl exploited two young women he knew to be minors by facilitating their prostitution and profiting from it. He also worked as a pimp for several other women and tried to recruit a third minor into prostitution. Prawl's comments to the Probation Officer who prepared the Presentence Report do not evince a sense of true remorse—instead, he said that he "didn't feel like [he] was doing anything bad" because he wasn't physically harming the girls and women (a contention Minor Victim 1 disputes). To advance the goals of 18 U.S.C. § 3553(a)—including imposing a just punishment, promoting respect for the law, and encouraging specific and general deterrence—the Government is seeking a sentence within the advisory Guidelines range of 151 to 188 months of imprisonment, plus a lengthy term of supervised release and restitution as set forth in the plea agreement.

I.   <u>THE OFFENSE AND RELEVANT CONDUCT</u>

<u>Minor Victim 1</u>

As set forth in more detail in the Presentence Report ("PSR"), Prawl began promoting Minor Victim 1 ("MV-1"), who was then seventeen years old, in prostitution in the summer of 2015. The Government acknowledges that there are factual inconsistencies about how MV-1 came to meet Prawl,[1] but there is no dispute that Prawl started to facilitate MV-1's prostitution at

---

[1] Prawl claims that MV-1 provided the Bridgeport Police Department with a statement that is inconsistent with the statements of MV-1 set forth in the PSR. The Government is unaware of

1

the Sunnyside Inn in Bridgeport shortly after they met and at various strip clubs in the area thereafter. PSR ¶¶ 9-11. Prawl provided MV-1 with a fake driver's license stating that she was 24 years old, despite that he knew she was a ward of the Department of Children and Families—and thus under the age of eighteen. PSR ¶ 11. Prawl would arrange prostitution appointments for MV-1, at which she would earn $60 for ten minutes, $100 for thirty minutes, $150-$200 for an hour, and $500+ for longer than an hour. PSR ¶ 10. According to MV-1, Prawl would keep all of the money that she earned. PSR ¶ 10. Prawl also took MV-1 to a "modeling studio" in New York and had photos taken of her in suggestive clothing. PSR ¶ 13.

MV-1 stated that Prawl was abusive with her and had sex with her multiple times—a tool of manipulation seen often in cases involving sex trafficking of minors. PSR ¶ 12. A witness interviewed by the Government corroborated at least one occasion on which Prawl was physically abusive toward MV-1, yelling at her and pulling her hair. PSR ¶¶ 12, 16. After that incident, MV-1 left Prawl and began to work in prostitution for another individual who is the defendant in a related case, Brandon "14K" Williams. PSR ¶¶ 16-17. MV-1 believes that she was "sold" from Prawl to Williams, PSR ¶ 15, though Prawl denies this. PSR ¶ 15. The government did find text messages between Prawl and Williams suggesting that Prawl wanted MV-1 back after she began working for Williams. Prawl also seemed very upset with MV-1 during a Facebook video post in August 2015. PSR ¶ 20.

As of the date of this submission, MV-1 intends to be present at sentencing and may give a statement to the Court.

---

such a statement; the only statement MV-1 gave to the Bridgeport Police Department is consistent with the PSR's recitation of her version of events.

Minor Victim 2

After being interviewed by law enforcement, MV-1 identified Minor Victim 2 ("MV-2"), whose photograph appeared on Prawl's Beauty Boots Modeling Agency Facebook page. PSR ¶ 22. MV-2, who was seventeen at the time that she worked in prostitution for Prawl, was located and interviewed. She stated that she was introduced to Prawl through a friend who was already working in prostitution for Prawl. PSR ¶ 23. During the two months that she worked for him on and off, he had between three and seven other women staying at his house and working in prostitution for him. PSR ¶ 24.

Prawl and his girlfriend Alondra Adames would facilitates MV-2's prostitution by posting advertisements on Backpage, a website on which "adult" ads—which are merely thinly-veiled advertisements for commercial sex— are posted. PSR ¶ 25. Suggestive photographs of MV-2 taken by Prawl were used to advertise MV-2's sexual services, and Prawl provided the text content for the ads, which was meant to entice the customers. PSR ¶¶ 25-26.

Prawl would have MV-2 and the other women who were working for him speak to the potential customers, and would get angry if the girls and women did not post ads on Backpage when he told them to. PSR ¶ 29. (Prawl disputes that he would get angry, but MV-2 reported that he did.) Prawl set the prices for the different acts in which MV-2 would engage and the various time periods she would spend with customers. PSR ¶ 29. Prawl also instructed MV-2 and the other women about how they should interact with customers and what to do if law enforcement came to the house. PSR ¶ 31. He provided alcohol, marijuana, and cocaine to MV-2 and the other women in the house, and threatened MV-2 about speaking out against him. PSR ¶ 33. Prawl had sex with MV-2 more than once while she was with him. PSR ¶ 32. MV-2

stated that she told Prawl her true age and he did not seem to care that she was a minor.  PSR ¶ 35.

### Relevant Conduct

Various events that are relevant to the Court's determination of the appropriate sentence are set forth at paragraphs 38 to 51 of the PSR.  Of particular relevance to the federal case was Prawl's recruitment of Minor Victim 4, which he denies, but the Government has no reason to disbelieve.  PSR ¶¶ 43-46.  According to MV-4, she did not work in prostitution for Prawl, despite his attempts to get her to do so.  PSR ¶¶ 43-46.  MV-4 also corroborates much of what MV-2 reported to law enforcement about Prawl's interactions with MV-2 and the other women in his house.  PSR ¶ 44.

### Pending State Cases

At the time of this submission, Prawl has three pending state criminal cases:  (1) a case charging assault in the third degree and threatening in the second degree from an alleged offense on March 12, 2016, while he was incarcerated; (2) a case charging sexual assault in the first degree from an alleged offense occurring on August 8, 2015; and (3) a case charging promoting prostitution in the second degree from an alleged offense on March 9, 2016.  The various state prosecutions are expected to be resolved after the federal sentencing takes place.

## II.     GUIDELINES CALCULATION

The parties and PSR agree that the Guidelines calculations pertinent to Prawl's guilty plea to Count Two of the Indictment are as follows:  a base offense level of 30, pursuant to U.S.S.G. § 2G1.3(a)(2); a two-level increase because the offense involved the use of a computer or an interactive computer service to entice, encourage, offer, or solicit a person to engage in the prohibited sexual conduct with the minor, pursuant to U.S.S.G. § 2G1.3(b)(3)(B); and a two-

level increase because the offense involved the commission of a sex act or sexual contact, pursuant to U.S.S.G. § 2G1.3(b)(4)(A).[2] The adjusted offense level is thus 34, which becomes 31 after three levels are subtracted for acceptance of responsibility. Given that Prawl is in Criminal History Category IV, the advisory Guidelines range is 151-188 months' imprisonment and a fine of $30,000 to $300,000. Prawl faces a minimum of 120 months' imprisonment as the result of his charge.

III.    DISCUSSION OF SENTENCING FACTORS

Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)    the need for the sentence imposed—
    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[2] Under 18 U.S.C. § 1591, a sex act does not have to be completed to establish a violation of the statute. See United States v. Willoughby, 742 F.3d 229, 241 (6th Cir. 2014) ("And '[t]he future verb tense of the phrase 'will be caused'—which precedes 'to engage in a commercial sex act'—indicates that a sex act does not have to occur to satisfy the elements of the child-sex-trafficking-offense. … Willoughby's offense was complete when he acted with the requisite knowledge—when he dropped [the victim] off at [a customer's residence], for example,—and not at the moment of penetration."), quoting United States v. Garcia-Gonzalez, 714 F.3d 306, 312 (5th Cir. 2013); see also United States v. Jungers, 702 F.3d 1066, 1073-74 (8th Cir. 2013) (noting that a prostitution customer can be convicted for committing an act prohibited by § 1591, such as transporting a minor, without actually engaging in a sex act if the act was done with knowledge or reckless disregard of the fact that the minor would be caused to engaged in a commercial sex act). However, recognizing that the completion of sex acts is common in this type of case, the Government in this district typically seeks the enhancement for commission of a sex act or sexual contact when the *defendant* has had sex with the minor victim, which was the case here with MV-2.

>   (3)     the kinds of sentences available;
>   (4)     the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];
>   (5)     any pertinent policy statement [issued by the Sentencing Commission];
>   (6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>   (7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, a sentence within the Guidelines range of 151-188 months' imprisonment would serve the purposes set forth in Section 3553(a), including reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence, and protecting the public from further crimes by the defendant.

By any measure, the sex trafficking of minors is a serious offense, and Prawl's victimization of two minors—and attempted victimization of a third—is particularly severe. As set forth above and in the PSR, Prawl was particularly exploitative of MV-1, using violence as a means to control her. Prawl's comments to the Probation Officer make the Government concerned about whether he actually realizes what he did was wrong and whether he truly feels remorse for profiting from the sexual exploitation of two seventeen-year-olds. Prawl seems to believe that since he did not force or compel the girls with physical violence (according to him), his crime wasn't *that* bad.[3] To the extent he feels remorse, it appears to be because of the long penalty he is now facing, as opposed to his actions with respect to the young victims. The two minor victims in this case are making efforts to rebuild their lives and move beyond their

---

[3] A frequently-attempted defense in cases involving the sex trafficking of 17-year-olds is that because 16 is the age of consent under Connecticut law, 17-year-old victims "chose" to work with a pimp and consensually engaged in commercial sex. But because children under the age of 18 are minors under federal law, and because a minor cannot consent to her own exploitation, such a defense is untenable. See, e.g., United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009) ("Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims.").

victimization, but that is not an easy task.  Even if Prawl does not recognize the seriousness of his offense, the Court should.

Prawl has requested a below-Guidelines sentence of 120 months' imprisonment, but the Government believes that such a sentence would be inappropriate here because there are multiple victims; because Prawl has a long history of criminal activity, including multiple encounters with law enforcement during which he was promoting prostitution; and because the Government is not confident that Prawl understands *why* what he did was wrong, prompting a concern that his risk for reoffending is high.  To be sure, the Government has, in the past agreed not to argue for a sentence of more than 120 months' imprisonment for certain defendants in sex trafficking cases.  See, e.g., United States v. Jordan Anate, 15cr203 (VLB) (one victim case); United States v. Romane St. Christopher McKenzie, 15cr142 (JAM) (one victim case).  But those cases each involved one victim and the defendants did not have criminal histories as significant as Prawl's.  Those cases are thus distinguishable from Prawl's and Prawl's crimes are deserving of a more significant punishment.

For instance, Prawl's encounters with law enforcement during 2015 and 2016 demonstrate the need for a lengthy sentence.  In the fall of 2015, after he had prostituted MV-1, Prawl was encountered by law enforcement in a sting operation intended to recover minors who were victimized by sex trafficking rings.  PSR ¶ 21.  After that encounter, he began promoting MV-2 in prostitution for a few months (December 2015 through February 2016).  Then, at the end of February 2016, he was arrested for promoting prostitution after providing women in response to law enforcement's undercover call to a Backpage ad.  PSR ¶ 38.  His unsolicited statement to the police after that incident ("I'm not here selling p*ssy") is demonstrative of his attitude toward his facilitation of prostitution.  PSR ¶ 38.  After being released on bond for the

February 2016 charge, law enforcement again came into contact with Prawl in early March when, in responding to an ad posted by Prawl, a law enforcement agent posing as a potential customer was directed to come to the house next to Prawl's to visit one of the women working for Prawl.  PSR ¶ 41.  Then, on March 9, 2016, Prawl was again arrested for promoting prostitution in an undercover operation in Norwalk.  PSR ¶ 42.  He has been detained since then, and accumulated another charge of assaulting a correctional officer while in pretrial detention.

Prawl claims that his difficult childhood background is a reason that he is deserving of a lesser sentence.  While the Government is sympathetic to all defendants who have unstable upbringings, it is difficult to understand how Prawl's upbringing could or should excuse his repeated course of criminal conduct twenty years later, particularly for an offense like that with which he is charged.  Over the course of seven months, then, Prawl repeatedly flouted the law and, in the process, exploited two minors.  His brushes with the law and previous arrests did not deter him from continuing to promote the prostitution of women and girls.  Had he not been detained on a high bond, it is likely that he would be continuing his pattern of criminal activity at the expense of more victims.

For these reasons, and to vindicate the two minor victims whose lives Prawl changed for the worse, the Government respectfully seeks a Guidelines sentence of 155-188 months' imprisonment, a lengthy term of supervised release, and restitution of $10,080 to Minor Victim 1 and $2,500 to Minor Victim 2, as agreed upon in the plea agreement.

                                              Respectfully submitted,

                                              DEIRDRE M. DALY
                                              UNITED STATES ATTORNEY

                                              */s/*

                                              SARALA V. NAGALA

        ASSISTANT UNITED STATES ATTORNEY
        FEDERAL BAR NO. phv05529
        157 CHURCH STREET, 25TH FLOOR
        NEW HAVEN, CT 06510
        (203) 821-3700
        Sarala.Nagala@usdoj.gov

## **CERTIFICATE OF SERVICE**

       I hereby certify that on August 8, 2017, a copy of the foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

        /s/
        SARALA V. NAGALA
        ASSISTANT U.S. ATTORNEY